**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIK DIEDRICHSEN and RIVERBEND RESOURCES INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 1:25-cv-5219 <br><br><br><br><br> **JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT**

Plaintiffs Erik Diedrichsen ("Diedrichsen") and Riverbend Resources Inc. ("RRI") (collectively, "Plaintiffs") hereby bring the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, as follows:

**I.      JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 et seq., 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction). This Court has original subject matter jurisdiction over the unfair competition claim asserted in this action pursuant to the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., (the "Lanham Act).

2.      In addition, pursuant to Rule 64 of the Federal Rules of Civil Procedure and 735 ILCS 5/4-101(1), (5), and (8), Plaintiffs seek a writ of prejudgment attachment to secure

1

Defendants' assets – including but not limited to funds held in marketplace accounts and registered trademarks or brand registrations used in connection with the sale of the infringing products – to ensure satisfaction of any final judgment in this matter.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the accounts identified on Schedule A attached hereto. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores or marketplace accounts that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiffs' patented design, as described below, (collectively, the "Infringing Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the state of Illinois.

## II.     INTRODUCTION

4.     Plaintiffs filed this case to prevent e-commerce store operators who infringe upon Plaintiffs' patented design from further selling and/or offering for sale Infringing Products. Defendants create e-commerce stores through one or more online marketplaces (*e.g.*, Amazon.com, Walmart.com, eBay.com, etc.) and then advertise, offer for sale, and/or sell Infringing Products to unknowing consumers. E-commerce stores operated by the Defendants share identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

2

For example, the similarity of the Accused Products creates a reasonable inference that the products are all sourced from the same manufacturer in a series of transactions from that same as-yet-unknown-manufacturer to the individual Defendants.

5.     Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiffs' intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more aliases on the online marketplaces to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiffs are forced to file this action to combat Defendants' infringement of its patented design, as well as to protect consumers from purchasing Infringing Products over the internet. Plaintiffs have been, and continue to be, irreparably damaged through loss of market share (including the inability to generate and expand market share) and erosion of Plaintiffs' patent rights because of Defendants' actions and therefore seek injunctive and monetary relief.

### III.     THE PARTIES

6.     Plaintiff Erik Diedrichsen is the sole owner and President of RRI, the inventor of Plaintiffs' asserted patent, as described below. Diedrichsen is a citizen and resident of Massachusetts.

7.     Plaintiff Riverbend Resources Inc. is a Massachusetts corporation with its principal place of business at ███████████████████████.

8.     Diedrichsen is the inventor and owner of all right, title, and interest in U.S. Patent No. ████████ ("Plaintiffs' Patent"). A true and correct copy of Plaintiffs' Patent is attached hereto as Exhibit 1.

9.     Plaintiffs' Patent issued on ████████. *See* **Exhibit 1**.

3

10. RRI is the exclusive licensee of products which embody Plaintiffs' Patents.

11. Plaintiffs' Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35 U.S.C. § 282.

12. Plaintiffs' Patent discloses and claims a ██████████████████████████. *See* **Exhibit 1**.

13. Plaintiffs design, manufacture, market, and sell a variety of products related to ████████████████████, including ██████████████████████. Plaintiffs also sell ██████████████████.

14. Plaintiffs sell their products, including products that embody Plaintiffs' Patent (collectively, "Plaintiffs' Products"), exclusively direct-to-consumer through the Internet. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores as listed in Schedule A. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint if necessary.

15. As alleged above, Defendants are unknown individuals or business entities identified by the online marketplace accounts listed in Schedule A attached hereto. The true identity and legal structure (*i.e.*, whether an individual, sole proprietor, formally incorporated business, informal business entity, etc.) of each Defendant is unknown at this time.

16. Regardless of their entities and structure, however, Defendants are appropriately joined in a single action under 35 U.S.C. § 299(a) and Fed. R. Civ. P. 20(a) because Plaintiffs' claims arise from the same series of transactions or occurrences regarding a product that is the

same for purposes of an infringement analysis. In other words, each Defendant is alleged to have marketed, sold, or distributed the same or materially indistinguishable infringing product, often using coordinated or near-identical online storefronts, product listings, descriptions, and advertising language. Consequently, Plaintiffs' claims arise from the same series of transactions relating to the same infringing product and joinder is proper.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. Plaintiffs have implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiffs have identified many fully interactive e-commerce stores offering infringing products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), WhaleCo, Inc., ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operated by the Defendants as identified in this case. True and correct copies of the screenshot printouts showing the active e-commerce stores operated by Defendants and reviewed during Plaintiffs' prefiling investigation are attached as **Exhibit 2** (showing Defendants active Infringing Product listings) and **Exhibit 3** (showing address information for Defendants).

18. Defendants target consumers in this Judicial District and throughout the United States. Moreover, Defendants' actions are causing a direct and irreparable harm to Plaintiffs.

19. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters and other infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "*Combating Trafficking in Counterfeit and Pirated Goods*" prepared by the U.S.

Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id.* at p. 161.

20.     The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown marketplace procedures impact Plaintiffs' enforcement efforts when trying to assert its own patent rights.

21.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that the target United States consumers using the marketplace accounts identified on Schedule A, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

22.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, some Defendants facilitate sales by designing their e-commerce stores to appear to unknowing consumers to be authorized online retailers, outlet stores, or domestic wholesalers. However, the screenshots contained in **Exhibit 3** show that each Defendant's Seller Account is associated with a foreign mailing address, making their conduct of importing infringing goods into the United States even more likely. E-commerce stores operated by Defendants appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operated by the Defendants often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiffs have not licensed or authorized Defendants' use of Plaintiffs' Patent, and none of the Defendants are authorized retailers of Plaintiffs' Products.

23.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering or managing their accounts by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation. Unscrupulous sellers will also register multiple accounts using different information or aliases making it difficult or impossible to determine whether Defendants are truly separate entities at all.

24.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

7

25.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores identified on Schedule A often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or the other accounts they operate or use. E-commerce stores operated by Defendants include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Infringing Products sold through each e-commerce store bear similar irregularities and indicia of being infringing to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated either directly to each other or through a series of related transactions stemming from a common source.

26.     E- commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn or 123tro.com, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. These websites serve as hubs for sharing tactics to evade enforcement, providing detailed guidance on circumventing marketplace policies and masking their infringing activities. Additionally, platforms like sellerdefense.cn and 123tro.com monitor legal developments closely, notifying operators like the Defendants of newly filed intellectual property infringement lawsuits by rights holders, including the Plaintiffs. These websites advise e-commerce store operators to take swift action in response to such lawsuits by, e.g.: (a) temporarily halting sales of infringing products to minimize exposure; (b) rapidly withdrawing funds from accounts linked to their online stores to prevent seizure or freezing by enforcement actions; (c) transitioning to new payment platforms to obscure financial traces and continue operations undetected. This coordinated effort

not only perpetuates infringement but also obstructs legitimate enforcement efforts, enabling operators to evade accountability while continuing to profit from unauthorized use of intellectual property.

27.      Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiffs' enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiffs.

28.      On information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences (*e.g.*, by sourcing their Infringing Products from a common entity). Defendants, without authorization or license from Plaintiffs have, jointly and severally, knowingly and willfully infringed Plaintiffs' Patent in connection with the use and/or manufacturing of Infringing Products and distribution, offering for sale, and sale of Infringing Products into the United States and Illinois over the Internet.

29.      Defendants' unauthorized use and/or manufacturing of the invention claimed in Plaintiffs' Patent in connection with the distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiffs' patent rights and is irreparably harming Plaintiffs.

**COUNT I**
**PATENT INFRINGEMENT (15 U.S.C. § 271) – THE █████ PATENT**

30.      Plaintiffs hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31.     As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiffs, have jointly and severally, knowingly, and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the ▇▇ Patent.

32.     As shown in the claim charts attached hereto as **Exhibit 6**, the products being sold by Defendants infringe upon the design claimed in the ▇▇ Patent. The claim charts in **Exhibit 6** are provided for illustrative purposes and are based on the Defendants' Infringing Product listings. These charts are presented without the benefit of discovery or claim construction. Plaintiffs reserve the right to modify their infringement theory as appropriate as the case progresses and additional information becomes available.

33.     Specifically, Defendants have infringed and continue to infringe the ▇▇ Patent by making, using, importing, selling, and/or offering to sell the Infringing Products identified in Schedule A in the United States without authorization or license from Plaintiffs.

34.     Defendants have profited by their infringement of the ▇▇ Patent, and Plaintiffs have suffered actual harm as a result of Defendants' infringement.

35.     As a direct and proximate result of Defendants' infringement, Plaintiffs have suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of the ▇▇ Patent in connection with the offering to sell, selling, or importing of products that infringe the ▇▇ Patent, including these such acts into the State of Illinois, is irreparably harming Plaintiffs. Defendants' wrongful conduct has caused Plaintiffs to

suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions.

36.     Defendants' infringement has been and continues to be willful. Accordingly, Plaintiffs are entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

37.     Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of the ▮ Patent, Plaintiffs will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

38.     Plaintiffs are entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284 and 35 U.S.C. § 289, but in no event less than a reasonable royalty.

## COUNT II
## UNFAIR COMPETITION (15 U.S.C. §1125(a))

39.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

40.     Defendants have developed, manufactured, imported, advertised, and/or sold Infringing Products. *See* **Exhibit 2** and **Exhibit 6**. These acts of infringement have prevented Plaintiffs from generating or expanding their market share in what should have been an exclusive field.

41.     By selling products that infringe upon Plaintiffs' Patent, Defendants are competing for sales against Plaintiffs in an unfair and unlawful manner or are preventing Plaintiffs from entering the market and generating their market share.

42.     Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of Infringing Products creates express and implied misrepresentation that the Infringing Products were created, authorized, or approved by Plaintiffs as the owner and assignee respectively, of the '█ Patent, allowing Defendants to profit from the goodwill, time, research, and development of the invention as embodied in Plaintiffs' Patent, causing Plaintiffs irreparable and immeasurable injury.

43.     On information and belief, Defendants have intentionally infringed upon Plaintiffs' Patent by selling Infringing Products to take unfair advantage of the enormous time, effort, and expense spent in connection with the '█ Patent.

44.     On information and belief, Defendants have offered to sell and knowingly sold Infringing Products with the understanding that, as foreign entities, any enforcement efforts by Plaintiffs would be difficult as many countries, including and especially China, make enforcement efforts of foreign IP difficult and collection of any judgments highly improbable.

45.     In other words, Defendants have structured their businesses to avoid typical intellectual property enforcement.

46.     On information and belief, to the extent enforcement efforts are made against Defendants, Defendants will merely ignore the efforts if they are permitted to move any assets out of their marketplace accounts and can easily create new accounts for online marketplaces to sell Infringing Products – with little recourse available to Plaintiffs.

47.     Defendants have engaged in a pattern of unfair competition by operating storefronts in e-commerce marketplaces with the intent to defraud customers and evade legal and financial responsibilities.

48. Specifically, Schedule A Defendants tend to engage in the following unlawful activities that collectively constitute unfair competition and undermine the integrity of the marketplace:

    a. Defendants systematically manipulate marketplace systems by diverting funds from marketplace accounts into personal or untraceable financial accounts. This practice unlawfully extracts financial resources from the marketplace while depriving rightful owners and stakeholders of their earnings. By leveraging such diversion tactics, Defendants avoid payment of legitimate fees, charges, and potential damages owed due to their infringing activities, creating an uneven playing field and harming competitors.

    b. Upon detection of their infringing activities or facing financial scrutiny, Defendants abruptly close their storefronts to evade investigation, enforcement actions, or legal accountability. This intentional act of shuttering operations prevents effective recourse for intellectual property owners and allows Defendants to avoid marketplace penalties, restitution, and damages owed to injured parties.

    c. After closing their storefronts, Defendants routinely reopen under new business entities, names, or aliases. This practice of entity cycling is designed to circumvent marketplace policies, intellectual property enforcement mechanisms, and legal accountability. By engaging in this deceptive practice, Defendants create confusion for consumers, erode trust in the marketplace, and gain an unfair advantage over competitors who comply with marketplace rules and legal requirements.

    d. Defendants employ tactics such as altering product listings, misrepresenting the origin or authenticity of goods, and concealing the infringing nature of their

activities. These practices mislead consumers and harm the reputation and market position of legitimate businesses.

e. Defendants utilize sophisticated networks and tools, including third-party services and forums, to share strategies for evading detection, liquidating funds, and masking their operations. This coordinated effort frustrates intellectual property enforcement and unfairly gives Defendants a competitive edge by operating outside the bounds of lawful commerce.

49. These practices collectively represent unfair competition, as Defendants not only profit from infringing activities but also exploit systemic vulnerabilities to the detriment of lawful marketplace operators, intellectual property owners, and consumers.

50. Defendants' acts, as described herein, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' structure of their business to permit them to sell and/or offer for sale products which infringe Plaintiffs' Patent, while preventing typical enforcement actions from being effective, constitutes unfair competition.

51. Defendants have also engaged in practices that create consumer confusion, misrepresentation, and deception in the marketplace. Specifically:

a. Defendants knowingly market and sell products that infringe Plaintiffs' patent, falsely representing these infringing goods as legitimate or authorized products. This misrepresentation deceives consumers into believing they are purchasing products that meet the same standards of quality, innovation, and design as those protected by Plaintiffs' patent.

b. By circumventing patent protections, Defendants avoid the costs associated with lawful product development, manufacturing, and marketing. This gives Defendants

14

an unfair economic advantage over Plaintiffs and other competitors in the marketplace, enabling them to sell infringing products at a lower price point while profiting from Plaintiffs' intellectual property.

c. Defendants' unlawful actions dilute the value of Plaintiffs' patented innovations and create a distorted marketplace where legitimate operators are forced to compete with infringing goods. This undermines consumer trust and the fair competition principles intended to be upheld by the Lanham Act.

52. Defendants' actions, therefore, constitute unfair competition in violation of Section 43(a) of the Lanham Act. Their sale and offer for sale of Infringing Products not only harm Plaintiffs' business and reputation but also disrupts fair trade practices and deceives consumers, warranting immediate legal redress and remedies to protect Plaintiffs' rights and restore marketplace integrity.

53. Plaintiffs have no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

## COUNT III
## PREJUDGMENT ATTACHMENT (735 ILCS 5/4-101 et seq.)

54. Plaintiffs hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

55. Pursuant to 735 ILCS 5/4-101 et seq., Plaintiffs are entitled to prejudgment attachment of assets held by Defendants, including any funds maintained in online marketplace accounts or financial institutions, as well as any intellectual property rights held by Defendants, including but not limited to registered trademarks and marketplace brand registrations, in order to secure satisfaction of a judgment.

56.     Defendants have engaged in unlawful conduct, including willful patent infringement and unfair competition in violation of the Lanham Act.

57.     Plaintiffs are entitled to attachment pursuant to 735 ILCS 5/4-101(1), because Defendants are nonresidents of the State of Illinois and/or operate through foreign entities beyond the jurisdictional reach of this Court for collection purposes.

58.     Attachment is also proper under 735 ILCS 5/4-101(5), because on information and belief, Defendants are about to fraudulently conceal, assign, or otherwise dispose of their property or effects with the intent to hinder, delay, or defraud creditors including Plaintiffs.

59.     Additionally, attachment is appropriate under 735 ILCS 5/4-101(8), because, on information and belief, Defendants fraudulently concealed and continue to conceal their identities and assets to avoid the jurisdiction of the Court and to frustrate enforcement of any judgment.

60.     On information and belief, Defendants have used fictitious seller aliases, false or incomplete registration data, and offshore bank accounts, and have operated multiple storefronts in parallel to carry out infringing sales. These tactics strongly suggest an intent to move assets out of reach and obstruct enforcement of any judgment entered in this case.

61.     Plaintiffs seek the issuance of a writ of attachment directed to third-party payment processors, financial institutions, and online marketplace platforms, including but not limited to Amazon, PayPal, Walmart, eBay, and Alipay, to restrain and preserve funds, trademark registrations, brand registrations, and other assets in accounts associated with the Defendants identified on Schedule A.

62.     Prejudgment attachment is necessary and appropriate to ensure that any judgment rendered in this case is not rendered ineffectual due to the dissipation, concealment, or transfer of

assets derived from Defendants' infringing and deceptive conduct, including any intellectual property rights or authorizations they hold or control on the online marketplaces.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiffs' Patent; and

   b. Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiffs' Patent.

2) Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiffs' Patent.

3) That Judgment be entered against Defendants finding that they have infringed upon Plaintiffs' Patent.

4) That Judgment be entered against Defendants finding that infringement of Plaintiffs' Patent has been willful.

5) That Plaintiffs be awarded damages for such infringement in an amount to be proven at trial, including Defendants' profits pursuant to 35 U.S.C. § 289 and any other damages as appropriate under 35 U.S.C. § 284, together with interests and costs.

6) That Plaintiffs be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of Plaintiffs' Patent.

7) A finding that this case is exceptional under 35 U.S.C. § 285.

8) A finding that Defendants engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

9) That Plaintiffs be awarded their reasonable attorneys' fees and costs.

10) That Plaintiffs be awarded a writ of attachment pursuant to 735 ILCS 5/4-101 et seq., authorizing the restraint and preservation of Defendants' assets, including funds held in online marketplace accounts, financial institutions, and any registered trademarks, brand registrations, or other intellectual property held by or associated with Defendants, in order to secure satisfaction of any judgment entered in this case.

11) Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 12, 2025

Respectfully submitted,
/s/Edward L. Bishop
Edward L. Bishop
ebishop@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
BISHOP & DIEHL, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Tel.:   (847) 969-9123
Fax:   (847) 969-9124

*Counsel for Plaintiffs Erik Diedrichsen and Riverbend Resources Inc.*

**VERIFICATION**

I, Erik Diedrichsen, hereby certify as follows:

1.      I am the sole owner and President of Riverbend Resources Inc. As such, I am authorized to make this Verification on Riverbend Resources Inc.'s behalf.

2.      I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3.      I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.


Executed on May  9, 2025.


_____
Erik Diedrichsen
President
Riverbend Resources Inc.